■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL COSTELLO, Appellant.—Judgment of the Supreme Court, New York County, rendered March 14, 1979 convicting defendant of murder in the second degree and sentencing him to imprisonment for a minimum term of 15 years and a maximum term of life, reversed, on the law, and the matter

remanded for a new trial. On September 4, 1977, Larry Martino and his wife Susan, and their two children, residents of New Jersey, came to New York City to visit friends and relatives. They brought with them gifts which they purchased during a recent vacation in the Bahamas. The evening's round of partying started at 8:30 P.M. at the Elis' apartment where the four couples involved ate and drank. At about 2:00 A.M. three of the couples repaired to the apartment of the Costellos. They arrived there at about 3:00 A.M. The eating and drinking continued. Some time thereafter Costello and Martino left the living room and proceeded to the rear bedroom. When neither of the men returned, Mrs. Costello went to the rear bedroom. About three minutes later she returned and, laughing hysterically, she pulled Nicholas, the male partner of the third couple into the bedroom. Mrs. Martino was told not to join them. Shortly thereafter Susan Martino asked Mrs. Nicholas to see what had happened. When Mrs. Nicholas failed to return, Mrs. Martino sought to enter the bedroom but found Mrs. Nicholas blocking the other side of the door leading into the room. Ultimately Mrs. Martino was told that her husband had gotten angry and had run out the metal door which led from the bedroom to the public hallway. Costello and Nicholas left to look for Martino. They returned about an hour and a half later, and reported no success. Sometime between 8:15 and 8:30 A.M. the police discovered Martino's body under the Conrail viaduct at 106th Street and Park Avenue. The autopsy disclosed that he had been shot in the head at point blank range. Other evidence tied defendant to the shooting. The only question presented which merits discussion is whether the evidence warranted a charge of the potential effect of intoxication upon intent. While the evidence of the specific intake of alcohol by defendant was meager there was ample evidence that large quantities of alcoholic beverages had been disposed of by the male participants at the party. Giving the defendant the most favorable interpretation of the testimony of the witnesses the jury could have found that defendant was intoxicated to the point where he could not possess the specific intent necessary to commit the crime of murder in the second degree (Penal Law, § 15.25; *People v Isrile*, 64 AD2d 536). Hence, defendant was entitled to the charge requested and the failure to give it was error. It is true that, in connection with the request to charge the possible effect of intoxication, counsel for defendant also requested that the trial court charge down to manslaughter in the first degree. Whatever the propriety or impropriety of that request, the court, at the least, should have charged manslaughter in the second degree, the crime implicitly involved in the request for the intoxication charge. Concur—Sandler, J. P., Sullivan, Bloom, Silverman and Ross, JJ.